# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>　　　　v.<br><br>ABLE MERINO TAPIA,<br>AKA ABEL MERINO TAPIA,<br><br>　　　　　　　Appellant. | DIVISION ONE<br><br>No. 87081-5-I<br><br>UNPUBLISHED OPINION |

PER CURIAM — A jury convicted Able Merino Tapia of child molestation in the first degree and rape of a child in the first degree. He challenges the trial court's admission of two uncharged acts of sexual misconduct involving the victim, A.R. We hold both that the evidence of the prior acts was properly admitted to prove motive and intent and that Merino Tapia does not establish that the prejudice to him resulting from the admission of the evidence outweighed the evidence's substantial probative value. Therefore, we affirm.

## I.　BACKGROUND

A.R., her mother, and her sisters met Merino Tapia and his family through their church. In 2017, when A.R. was approximately 10 years old,[1] Merino Tapia, his wife, and two sons moved into the apartment complex in which A.R. and her family lived. Occasionally, A.R.'s family visited Merino Tapia's apartment, and A.R. and her sisters played with Merino Tapia's sons while their mothers prayed,

---

[1] A.R. was born December 31, 2006.

studied, or socialized. A.R. also visited the apartment by herself after Merino Tapia and his wife asked for her to help one of their sons with his homework. Merino Tapia was present in the apartment during these visits.

Merino Tapia and his family moved away from the apartment complex in 2018. The two families did not keep in contact.

In August 2021, A.R. disclosed to her older sister that she had been sexually assaulted by Merino Tapia. A.R. and her sister, together, informed their mother. A.R.'s sister then called the police to report the allegations.

The State charged Merino Tapia with one count each of rape of a child in the first degree and child molestation in the first degree.[2] The charges resulted from a single incident that occurred when A.R. was about 10 years old. She was playing outside with a friend when Merino Tapia called her to come inside his apartment. When they were in the living room, Merino Tapia crouched down, pulled down A.R.'s pants and underwear, and put his fingers into her vagina.

Prior to trial, the State filed a motion to admit evidence of two additional acts of sexual misconduct perpetrated on A.R. by Merino Tapia. The State sought to admit the evidence of the two uncharged acts to show motive, res gestae, intent, and, potentially, absence of accident or mistake if the issue arose at trial. The motion included an offer of proof of the following two incidents as disclosed by A.R. during a forensic interview.

---

[2] Merino Tapia was also charged with one count of child molestation in the first degree for a separate incident involving a different victim. Pursuant to a defense motion, the trial court severed this count from the two counts pertaining to A.R. A jury subsequently acquitted Merino Tapia of this charge.

2

In the first incident, A.R. described that she was playing with the other children downstairs when Merino Tapia motioned for her and then led her upstairs to a hallway near his room. Merino Tapia pulled her pants and underwear down and crouched down to be at her height. According to A.R., Merino Tapia "started touching 'his part,' and white stuff came out."

The second incident occurred during one of the times that A.R. and her mother visited Merino Tapia's apartment. While A.R.'s mother and Merino Tapia's wife were downstairs, Merino Tapia took A.R. to his room. He told A.R. to get into a position "like a dog," and pulled her pants down. Merino Tapia "got behind her on his knees and began touching himself until white stuff came out." The "white stuff" soiled A.R.'s clothing, and Merino Tapia told her to clean it up.

After hearing argument from the parties, the trial court determined that the evidence of the prior acts was admissible.

> [W]ith regard to the 404(b), it does appear to me by a preponderance of the evidence these prior events occurred. It does appear to me as though there is a reason, other than propensity, motive, res gestae. There is a need to show a purpose here for the acts that is more than innocent. Sexual gratification is an element. Sexual motivation is certainly a purpose that it appears to me as though it makes this evidence relevant, and it appears to me as though the probative value may in terms of explaining how children react to these sorts of events in the way of disclosure or in the way of other behaviors outweighs any prejudice, and there is prejudice no question, but I don't believe it's unfair prejudice.

A.R. testified as to the details of the two uncharged acts during trial. The trial court issued an instruction to the jury that the evidence of the uncharged acts

3

was to be considered "only for the purpose of the defendant's motive, intent, or A.R.'s state of mind for her delayed disclosure of the alleged abuse."

The jury found Merino Tapia guilty as charged. The trial court imposed a standard range indeterminate sentence of 93 months to life.

Merino Tapia appeals.

## II. ANALYSIS

Merino Tapia contends that the trial court erred in admitting testimony describing two uncharged acts involving A.R. According to Merino Tapia, the evidence was not admissible to establish intent, motive, or A.R.'s state of mind. We disagree. The evidence was relevant and admissible to establish motive and intent.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). However, such evidence may be admissible for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). Admission of evidence pursuant to ER 404(b) requires the application of a four-factor test. State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012).

> "[T]he trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

Gresham, 173 Wn.2d at 421 (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

We review a trial court's interpretation of ER 404(b) de novo as a matter of law. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). If the trial court correctly interpreted the rule, we review the decision to admit or exclude the evidence for abuse of discretion. Fisher, 165 Wn.2d at 745. "There is an abuse of discretion when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons." State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

Improper admission of evidence may be harmless, requiring reversal only if "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). Concerning admission of evidence of prior bad acts pursuant to ER 404(b), any error is harmless when the evidence is properly admitted for another reason. State v. Crossguns, 199 Wn.2d 282, 296, 505 P.3d 529 (2022); State v. Foxhoven, 161 Wn.2d 168, 178-79, 163 P.3d 786 (2007).

Here, among the cited purposes, the trial court admitted the evidence of the prior acts to show motive and intent. The trial court specified that the evidence was admissible to show motive "pursuant to State v. Crossguns . . . and its progeny," as well as intent "by showing that the defendant's purpose for the alleged touching . . . was done to gratify sexual desire." Both motive and intent are proper purposes for admission of ER 404(b) evidence.

The Washington Supreme Court has identified that, particularly in cases of child sexual assault, evidence of prior acts "shows the planning and intent involved in building a relationship with the child victim in order to obtain the

access and opportunity to commit the acts of sexual assault." Crossguns, 199 Wn.2d at 295. Such evidence demonstrates the dynamics between the offender and the victim, including the necessary components of "'access and control'" and "developing trust" that are necessary to the "'grooming process.'" Crossguns, 199 Wn.2d at 295 (quoting Basyle J. Tchividjian, *Predators and Propensity: The Proper Approach for Determining the Admissibility of Prior Bad Acts Evidence in Child Sexual Abuse Prosecutions*, 39 AM. J. CRIM. L. 327, 364, 368 (2012)).

The two uncharged incidents of sexual misconduct involving Merino Tapia and A.R. are the types of acts that, pursuant to Crossguns, are admissible to establish intent. The incidents demonstrate that Merino Tapia repeatedly isolated A.R., establishing the access and control necessary to commit sexual assault. Thus, while intent in general is not an element of the crimes charged, the specific intent toward A.R. was relevant to show planning and intent.

Additionally, evidence of the prior incidents was relevant to proving intent for the crime of child molestation in the first degree. See State v. Stevens, 158 Wn.2d 304, 309, 143 P.3d 817 (2006). A person is guilty of child molestation in the first degree "when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "Sexual contact" consists of "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13). Given this statutory definition, "[t]o prove sexual contact, an element of child molestation, the State

6

must prove a purpose or intent to gratify sexual desires." State v. Edwards, 171 Wn. App. 379, 389, 294 P.3d 708 (2012).  A defendant's purpose or intent, then, is relevant in child molestation cases. Stevens, 158 Wn.2d at 310.

After the trial court properly determines the admissible purpose and relevance of ER 404(b) evidence—here to establish motive and intent—the court must weigh the probative value of the evidence against its prejudicial effect.  See Gresham, 173 Wn.2d at 422.  Due to the inherent prejudice of ER 404(b) evidence, "[s]ubstantial probative value is needed to outweigh the potential prejudicial effect." State v. Sexsmith, 138 Wn. App. 497, 505-06, 157 P.3d 901 (2007).  "Generally, courts will find that probative value is substantial in cases where there is very little proof that sexual abuse has occurred, particularly where the only other evidence is the testimony of the child victim." Sexsmith, 138 Wn. App. at 506.

According to the trial court, "[t]here is prejudice, but the probative value in terms of explaining how children react to these events, the way they disclose, or other behaviors outweighs it."  On appeal, Merino Tapia asserts that the evidence of his other misconduct was "highly inflammatory and likely left a strong negative impression on the jury."  However, he fails to explain how this prejudice outweighs the probative value which is substantial "where the only direct witness to sexual abuse was the child victim." State v. Gantt, 29 Wn. App. 2d 427, 450, 540 P.3d 845, review denied, 3 Wn.3d 1002 (2024).  Therefore, we conclude that the trial court did not abuse its discretion in admitting the evidence of Merino Tapia's prior misconduct.

Affirmed.

For the court:

_Díaz, J._

_Feldman, J._

_Chung, J._