# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint of:<br><br>KENNETH ARCHIE PEEBLES,<br><br>        Petitioner, | No. 50172-4-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — In this timely personal restraint petition (PRP),[1] Kenneth Archie Peebles argues that he is under unlawful restraint following his August 22, 2014 jury trial conviction for first degree child molestation. He contends that he received ineffective assistance of counsel because his trial counsel failed (1) to request a lesser included offense instruction for fourth degree assault, and (2) to present expert witness testimony about the effects of alcohol on his ability to engage in voluntary acts. Because these arguments either fail or are not adequately supported, we deny his petition.

## FACTS

The facts of this case are succinctly summarized in our unpublished opinion addressing Peebles's direct appeal:

> When Peebles arrived at Jeremy Parrish's home to pick up some mail, Parrish invited his longtime friend to dinner. Parrish's eight-year-old daughter

---

[1] Peebles filed his petition in April 2017, less than one year after his direct appeal mandated in September 2016. Accordingly, this petition is timely. RCW 10.73.090(3)(b).

AP[2] was staying with her father and knew Peebles. Peebles and Parrish drank home brewed beer and they eventually decided that Peebles should stay the night because he had been drinking.

AP went to bed before the adults. She wore shorts, underwear, and a T-shirt to bed. AP awoke when she felt Peebles lie down beside her. He laid on his side facing her back. AP felt Peebles's hand touching her buttocks and the area below her hip. His hand was inside her shorts but outside her underwear. She moved his hand and went back to sleep. She awoke a second time when Peebles touched her in the same places and in her vaginal area.

AP then got out of bed and woke her father. When she told him what Peebles had done, Parrish got up and found Peebles asleep in another room. Parrish woke Peebles and drove him home. Peebles seemed unsteady but entered his house unassisted.

The next day Parrish told AP's mother about the incident and she called the police. AP described the touching to her mother and to professionals who examined and interviewed her.

The State charged Peebles with child molestation in the first degree. It sought to introduce DNA evidence obtained from AP's shorts that revealed two separate male DNA profiles; however, the defense moved before trial to exclude that evidence because the DNA test concluded that "the sample was not suitable for comparison purposes." Clerk's Papers (CP) at 27. The trial court granted the motion to exclude any reference to DNA evidence.

At trial, AP and her parents testified to the facts cited above. AP's mother also testified that AP told her that Peebles touched her buttocks twice. Parrish stated that AP told him that Peebles crawled into bed with her and pulled down her pants twice, though he admitted telling a deputy that AP said Peebles pulled her pants down once. Parrish also told the deputy that AP denied being touched in her private parts.

Deputy Jason Smith testified about going to Parrish's house and collecting the clothing that AP had worn to bed. This clothing was placed into three envelopes that were admitted into evidence. When the prosecutor asked Smith to identify the contents of each envelope, she also asked about the contents of a packet in the first envelope. Smith replied, "It's some sort of test, DNA test." IV Report of

---

[2] We use initials to protect the witness's identity. General Order 2011-1 of Division II, *In Re The Use of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases*.

Proceedings (RP) at 174.[3] The prosecutor then asked about the second envelope without further reference to DNA.

After excusing the jury for the day, the trial court addressed the DNA issue sua sponte. The prosecutor apologized for the inadvertent reference to DNA evidence, explaining that she had no idea that the DNA test was in the packet. The prosecutor added that the defense was entitled to a limiting instruction. After considering the matter overnight, defense counsel decided against an instruction that would highlight the DNA issue.

A deputy prosecutor who attended an interview with AP testified that the child stated Peebles had touched her "chest, bottom, and front." V RP at 293. Peebles testified that after drinking two high-alcohol beers with Parrish, he could only remember eating dinner and then waking up in his own home the next morning. He stated that he was shocked when Parrish told him about AP's allegations, but he explained that he could not deny molesting AP because of his intoxication that evening.

*State v. Peebles*, No. 47392-5-II, noted at 192 Wn. App. 1058, *review denied*, 185 Wn. 2d 1041 (2016).

In closing argument, Peebles argued that in his drunken state he accidentally touched AP and that although AP perceived this as sexual touching, that was not Peebles's intent. He also argued that AP "misperceived" what was going on because she had been asleep when the contact happened. RP (July 17, 2014) at 379-80. Peebles also discussed how, in some of her earlier statements, AP stated that Peebles did not touch her "bottom, her front[, or] her chest." RP (July 17, 2014) at 383. He also pointed out other inconsistencies in AP's statements over time.

On appeal, we rejected Peebles argument that he had received ineffective assistance of counsel based on defense counsel's failure to object to a reference to the excluded DNA evidence

---

[3] To allow for full review of this matter, we hereby transfer the electronic record from Peebles's direct appeal, *State v. Peebles*, No. 47392-5-II, noted at 192 Wn. App. 1058, *review denied*, 185 Wn. 2d 1041 (2016).

or portions of the State's closing argument.[4] *Peebles*, slip op. at 11-12. Less than a year after the direct appeal mandated, Peebles filed this PRP.

## ANALYSIS

Peebles argues that he received ineffective assistance of counsel because defense counsel failed (1) to request a lesser included instruction for fourth degree assault and (2) to present expert witness testimony to testify about the effects of alcohol on his ability to engage in voluntary acts. His first argument fails and his second argument is not adequately supported.

### I. ISSUES NOT PREVIOUSLY RAISED AND ADDRESSED

As a preliminary matter, the State asserts that Peebles cannot raise his ineffective assistance of counsel claims in his PRP because we addressed ineffective assistance of counsel claims on the merits in his direct appeal. We reject this argument.

A PRP petitioner generally cannot raise issues in a PRP if those issues were previously raised and addressed on the merits. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 678, 327 P.3d 660 (2014). But the premise that a petitioner who raised any ineffective assistance of counsel claim on direct appeal is barred from raising another ineffective assistance of counsel claim based on different grounds in a PRP has been expressly rejected by our Supreme Court in *In re Personal Restraint of Khan*, 184 Wn.2d 679, 689, 363 P.3d 577 (2015). Accordingly, we address Peebles's new ineffective assistance of counsel claims.

---

[4] We also rejected Peebles's sufficiency of the evidence, prosecutorial misconduct, and cumulative evidence claims. *See Peebles*, slip op. at 4, 6, 12.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

A. LEGAL PRINCIPLES

To be entitled to collateral relief in a PRP raising an ineffective assistance of counsel claim, the petitioner must show both that (1) defense counsel's representation was deficient and (2) the deficient representation was prejudicial. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 846-47, 280 P.3d 1102 (2012) (adopting the ineffective assistance of counsel analysis in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) in the PRP context). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). A petitioner alleging ineffective assistance of counsel must overcome a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. Prejudice occurs when there is "'a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

We have three options when reviewing a PRP. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). If the petitioner fails to make a prima facie showing that he received ineffective assistance of counsel, we will dismiss the petition. *See Yates*, 177 Wn.2d at 17. If he establishes ineffective assistance of counsel, we will grant the petition. *See Yates*, 177 Wn.2d at 18. Or, finally, if the petitioner makes a prima facie showing of ineffective assistance of counsel but we cannot determine the petition's merits on the record, we will remand to the superior court for a reference hearing. *See Yates*, 177 Wn.2d at 18; RAP 16.11(b).

To make a prima facie showing, the petitioner must present the evidence that is available to support the factual allegations underlying the claim of unlawful restraint. *Yates*, 177 Wn.2d at 18. A petition must state with particularity facts that, if proven, would entitle the petitioner to relief—bald assertions and conclusory allegations are not enough. *Yates*, 177 Wn.2d at 18.

If the petitioner's allegations are based on matters outside the existing record, he must also demonstrate that he has competent, admissible evidence supporting the allegations. *Yates*, 177 Wn.2d at 18. If the evidence is based on knowledge in the possession of others, the petitioner must present their affidavits, with admissible statements, or other corroborative evidence. *Yates*, 177 Wn.2d at 18. Factual allegations must be based on more than speculation, conjecture, or inadmissible hearsay. *Yates*, 177 Wn.2d at 18.

B. FAILURE TO REQUEST LESSER INCLUDED OFFENSE INSTRUCTION

Peebles first argues that defense counsel provided ineffective assistance of counsel because he did not request a lesser included offense instruction for fourth degree assault. Peebles asserts that defense counsel's failure to request an instruction on fourth degree assault was not a reasonable tactical decision because defense counsel was under the erroneous impression that the only available lesser included offenses were felonies and his counsel failed to properly advise him (Peebles) before deciding to forgo a lesser included offense instruction. Regardless of whether defense counsel's decision could have been a legitimate trial tactic, Peebles does not show ineffective assistance of counsel on this ground because he fails to establish prejudice.

To show prejudice in this context, Peebles must first demonstrate that he would have been entitled to the lesser included instruction if he had requested it. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). To be entitled to a lesser included offense instruction, Peebles had

6

to demonstrate that (1) all of the elements of fourth degree assault are necessary elements of first degree child molestation (the legal prong) and (2) the evidence would support an inference that Peebles committed only fourth degree assault (the factual prong). *State v. Stevens*, 158 Wn.2d 304, 311, 143 P.3d 817 (2006). Peebles satisfies the legal prong,[5] but not the factual prong.

In examining the factual prong, we view the supporting evidence in the light most favorable to Peebles. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). To establish the factual prong, the evidence must raise an inference that Peebles committed only fourth degree assault. *Fernandez-Medina*, 141 Wn.2d at 455. Here, to be entitled to a lesser included instruction on fourth degree assault, Peebles must point to evidence that he touched AP intentionally, but not for the purpose of sexual gratification.

Although AP's statements about the exact nature of the touching varied, she consistently stated that Peebles touched her underneath her clothing. And Peebles was unable to dispute her statements because he claimed to have no memory of any of the relevant events. Thus, taken in the light most favorable to Peebles, the evidence showed that he touched AP underneath her clothing. The nature of this touch goes beyond innocent intentional touching.

We note that this case differs from *Stevens*. In *Stevens*, our Supreme Court held that the defendant, Stevens, who had been charged with second degree child molestation, had been entitled to a lesser included offense instruction on fourth degree assault. 158 Wn.2d at 306. In *Stevens*, it

---

[5] Second degree child molestation necessarily includes the elements of fourth degree assault. *Stevens*, 158 Wn.2d at 311 (second degree child molestation necessarily includes the elements of fourth degree assault). Because the only difference between first and second degree child molestation is the ages of the parties involved, fourth degree assault is also a lesser included offense of first degree child molestation. *See* RCW 9A.44.083, .086.

was undisputed "that Stevens touched [one of the victims] on her breast," but Stevens asserted that the touch was accidental. 158 Wn.2d at 311. Considering the evidence that after Stevens grabbed the victim's breast he make a joke about it, our Supreme Court held that "[a] reasonable juror could infer the touch was intentional" and that this evidence supported an inference that Stevens touched the victim without privilege or consent, the touch was offensive, and therefore the touch was arguably unlawful. *Stevens*, 158 Wn.2d at 312. By implication, the Court held that a reasonable juror could also have concluded that the touching was not for the purpose of sexual gratification. *See Stevens*, 158 Wn.2d at 312.

Here, in contrast, there was no allegation of another motivation and the touching was more than a mere passing glance. The fact that the touching occurred under AP's clothing does not suggest an innocent motive. Accordingly, we hold that Peebles fails to show that he would have been entitled to the lesser included instruction had he requested it. Because he would not have been entitled to the instruction, defense counsel's failure to request this instruction does not amount to ineffective assistance of counsel and this argument fails.

C. FAILURE TO PRESENT EXPERT WITNESS TESTIMONY

Peebles next argues that defense counsel provided ineffective assistance of counsel because he failed to offer expert testimony about the effects of alcohol. Specifically, Peebles asserts that such expert testimony would have helped the jury to understand the voluntary intoxication

8

instruction by explaining "why the effects of alcohol can change a seemingly voluntary act into an involuntary act."[6] PRP Brief at 9.

Generally, the decision "to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel." *State v Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013). "A defendant can overcome this presumption by showing that counsel failed to adequately investigate or prepare for trial." *Davis*, 174 Wn. App. at 639.

The only support Peebles provides for this claim is his assertion in his affidavit that defense counsel did not suggest that they use an expert witness to assist with the intoxication defense. But Peebles does not provide anything demonstrating that counsel failed to investigate whether calling an expert witness would have been beneficial or whether the decision to refrain from presenting an expert witness was a reasonable tactical decision. Additionally, Peebles does not provide anything establishing what testimony such an expert would have provided beyond the bare assertion in his briefing that the expert might have explained "why the effects of alcohol can change a seemingly voluntary act into an involuntary act." PRP Brief at 9. As stated above, more than bare assertions and speculation are required to establish he is entitled to relief or a reference

---

[6] The voluntary intoxication instruction provided:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted for the purpose of gratifying sexual desires of either party.

Br. of Resp't, App. E (Jury Instruction 10).

hearing. Because Peebles has not adequately supported his ineffective assistance of counsel claim, it fails.

Accordingly, we deny this petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

PORGE, J.